FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

NOV 2 4 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| | |
|---|---|
| **MICHAEL LUCAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No.** C20 - 08281 |
| **vs.** | ) |
| | ) |
| **KOHANA COFFEE, LLC,** | ) |
| | ) **JURY DEMAND** |
| **Defendants.** | ) |

**VERIFIED COMPLAINT**

Plaintiff Michael Lucas ("Plaintiff" or "Mr. Lucas"), states for his complaint against

Kohana Coffee, LLC ("Defendant" or "Kohana") as follows:

**INTRODUCTION**

1.    Plaintiff Michael Lucas, who is African American, was employed as a Plant

Manager for Kohana from July 2016 until his employment was unlawfully terminated in January

2019.  In addition to performing his regular duties as Plant Manager, in August 2018 Mr. Lucas

also took on the additional duties of Quality Assurance ("QA") Director, resulting in all plant

personnel being under Mr. Lucas' leadership.

2.    Under Mr. Lucas's leadership, Kohana's sales volume increased and  the supply

chain was improved to become more efficient, all while achieving the highest Safe Quality

Foods audit score in plant history.

3.    Despite Mr. Lucas' performance, on January 10, 2020, Kohana notified Mr. Lucas

that his employment was being terminated under the pretext that his position was being

eliminated. Almost immediately thereafter, Kohana hired a less qualified non-African American

to perform the same duties.  As a result of these events, Mr. Lucas has suffered substantial

losses, including interference with his career and lost wages.  Therefore, Mr. Lucas brings this

1

action for unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*

## THE PARTIES

4.      Plaintiff Mr. Lucas, who is African American, is an individual and a citizen of California.

5.      Defendant Kohana Coffee, LLC is a Texas corporation which owns and operates the California based plant where Mr. Lucas was employed, and is a citizen of Texas.

## JURISDICTION AND VENUE

6.      Jurisdiction is invoked under 28 U.S.C. § 1331 because this case involves federal questions arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

7.      This action properly lies in the Northern District of California pursuant to 28 U.S.C. § 1391 in that meetings related to Mr. Lucas' employment were held in this judicial district, records concerning Mr. Lucas' employment are located in this judicial district, the decision to terminate Mr. Lucas's employment was made in this judicial district, and the termination of Mr. Lucas' employment occurred within the judicial district.

## FACTS

### Mr. Lucas's Performance Was Exemplary and Met All Legitimate Expectations

8.      In July 2016, Mr. Lucas began his employment as Plant Manager for Kohana where he maintained an outstanding performance record.

9.      In August 2018, following the departure of the Quality Assurance Director, Mr. Lucas assumed the responsibility of the Quality Assurance Director in addition to his full-time duties as Plant Manager. Mr. Lucas new duties included directing the duties of the Compliance

2

ation for unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII

of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.

## THE PARTIES

4.     Plaintiff Mr. Lucas, who is a certain African American, is an individual and a citizen of

California.

5.     Defendant Kellogg Company LLC is a ... corporation which owns and operates

the California bread line, where Mr. Lucas was employed, and is a citizen of Texas.

## JURISDICTION AND VENUE

6.     Jurisdiction in this action under 28 U.S.C. § 1331 because this case is based on a federal

question arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

("Title VII"), and under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

7.     This action properly lies in the District in Lieu of California pursuant to 28

U.S.C. § 1391 in ... because a breed in ...... .... employment were held in this judicial

district, records concerning Mr. Lucas' employment were located in this judicial district, the

decision to terminate Mr. Lucas' employment was made in this judicial district, and the

termination of Mr. Lucas' employment occurred within the judicial district.

## FACTS

**Mr. Lucas's Performance Was Exemplary and Met All Legitimate Expectations**

8.     In July 2015, Mr. Lucas began his employment as Plant Manager for Kellogg

where he maintained an outstanding performance record.

9.     In August 2018, including the duties ... of the Quality Assurance Director, Mr.

Lucas assumed the responsibility of the Quality Assurance Director. In addition, to all his duties

as on Plant Manager, Mr. Lucas was ..........

Specialist, such as specifying priorities for product releases by the California Department of Public Health, ensuring Safe Quality Foods ("SQF") Compliance, and managing lab technicians who administer daily plant hygiene programs. Though the Compliance Specialist is an SQF Practitioner, all compliance activities directed by Production and Sanitation staff were under Mr. Lucas' leadership.

10.    From August of 2018 through January of 2019 all plant personnel were under Mr. Lucas' leadership.

11.    Under Mr. Lucas' leadership in November of 2018, Kohana passed the SQF Audit with a score of 99— the highest score in the history of the plant. The SQF Audit is the most critical audit of the entire year and carries potential for shutdown if the third-party auditor discovers a major violation of food safety standards. SQF compliance is closely monitored by large retailers and multinational manufacturers or processors which demand certification of their suppliers. A SQF Certification means Kohana is qualified to supply these organizations or their suppliers, opening up a large market for Kohana's products.

12.    In order to improve efficiency, in late 2018 Mr. Lucas instituted a weekly forecasting exercise with CFO/COO to strengthen on-hand inventories to avoid out-of-stock fees, and built a check and balance system to capture orders that had been missed.

13.    Specifically, Mr. Lucas focused on improving efficiency for short-term shipments to Kroger, a national grocer. Mr. Lucas oversaw the production to meet demand for a blockbuster sales campaign in December of 2018 which exceeded the entire volume purchased for the first 11 months of the fiscal year. To accomplish this feat, Mr. Lucas led the entire plant team to work marathon hours during weekdays and weekends to get 15 trucks of product shipped over a very

specialist, such as specifying priorities for product releases by the California Department of Public Health, ensuring Safe Quality Foods ("SQF") compliance, and managing lab technicians who administer daily plant hygiene programs. Though the Compliance Specialist is an SQF Practitioner, all compliance activities directed by Production and Sanitation staff were under Mr. Lucas' leadership.

10. From August of 2018 through January of 2019 all plant personnel were under Mr. Lucas' leadership.

11. Under Mr. Lucas' leadership in November of 2018, Kohana passed the SQF Audit with a score of 99 — the highest score in the history of the plant. The SQF Audit is the most critical audit of the entire year and carries potential for shutdown if the third-party auditor discovers a major violation of food safety standards. SQF compliance is closely monitored by large retailers and multinational manufacturers, processors which demand certification of their suppliers. A SQF Certification means Kohana is qualified to supply these organizations or their suppliers, opening up a large market for Kohana's products.

12. In order to improve efficiency, in late 2018 Mr. Lucas instituted a weekly forecasting exercise with CFO/COO to strengthen on-hand inventories to avoid out-of-stock fees, and built a check and balance system to capture orders that had been missed.

13. Specifically, Mr. Lucas focused on improving efficiency for short-term shipments to Kroger, a national grocer. Mr. Lucas oversaw the production to meet demand for a blockbuster sales campaign in December of 2018 which exceeded the entire volume purchased for the first 11 months of the fiscal year. To accomplish this feat, Mr. Lucas led the entire plant team to work marathon hours during weekdays and weekends to get [illegible] trucks of product shipped over a very

tight timeframe that required work over the Christmas and New Year's Eve holidays. All 15 trucks met the Kroger deadline.

### Mr. Lucas' Employment Was Terminated for Pretextual Reasons and Was Discriminatory

14.     Despite all of his accomplishments, Mr. Lucas' employment was abruptly terminated on January 10, 2019 when he was called in to meet with the HR Manager, Jack Welsh and Chief Executive Officer ("CEO") Victoria Lynden with no notice, and handed a letter stating that his position no longer met the needs of the business.

15.     In the meeting, Ms. Lynden clarified that Kohana was undergoing organizational changes that consisted of the CFO/COO taking over Mr. Lucas' role.

16.     Six weeks later, however, a new "Plant Director" was already working at the plant. While the job title was different, it involved the same responsibilities as Mr. Lucas's "Plant Manager" position. Moreover, the position reported directly to the CFO, just as Mr. Lucas had, and had all the same direct reports as Mr. Lucas's role.

17.     The new Plant Director, Michael Pepugal, is not an African American.

18.     At the time of his hire, Mr. Pepugal lacked beverage industry experience and also lacked any experience with Kohana.

19.     As of January 2019 when his employment was terminated, Ms. Lucas had significant industry knowledge and experience.

20.     None of Mr. Lucas' job responsibilities were assumed by the CFO/COO following the termination of Mr. Lucas' employment contrary to the representations that had been made to him at the time of his termination.

21.     Following the termination of Mr. Lucas' employment, no African Americans reported to the CEO Ms. Lynden. There are currently no African Americans holding comparable

4

light to inform that contract work over the Christmas and New Year's Eve holidays. All 15

names in The Kenyan donation.

**Mr. Lucas' Employment Was Terminated for Pretextual Reasons and Was Discriminatory**

14.     Despite all of his accomplishments, Mr. Lucas' employment was abruptly terminated on January 10, 2019 when he was called in to meet with the CFR Manager Jack Welsh and Chief Security Officer ("CSO") Vian Ghia Lynch with no notice and handed a letter saying that his position was no longer for the needs of the business.

15.     In the meeting, Mr. Lynch clarified that he/she was undergoing organizational changes that consisted of a "PE/CFO/CIO" taking over but Lucas' role.

16.     Six weeks later, however, a new "PR in Director" was already working at the alone. While the job title was different, it involved the same responsibilities as Mr. Lucas' "Firm Manager" position. Moreover, the position reported directly to the CFR, just as Mr. Lucas had, and had all the same direct reports as Mr. Lucas' role.

17.     The new Firm Director Michael Flagg, is not an African American.

18.     At the time of this hire, was Flagged with a prior average industry experience and also lacked any experience with Kenyan.

19.     As of January 2019 when his employment was terminated, Mr. Lucas had significant hands-up knowledge and experience.

20.     More of that, travel, job responsibilities were assumed by the CFO/COO following the termination of Mr. Lucas, and despite contrary to the representations that had been made to him in the first office conference.

21.     Following the termination of Mr. Lucas' employment, no African Americans reported directly to CEO Max Levchin. Prior to the termination of Mr. Lucas' employment, no African Americans holding a reputable

5

level positions, including President of Sales, Vice-President of Operation, and the QA Director. Ms. Lynden terminated the employment of the only African American to report to her for what proved to be a pretextual and false reason.

22.     Kohana has a demonstrated history of mistreatment of African American employees. In early 2019, a QA Manager directed an African American subordinate to "run, ['n'-word], run." The QA Manager went undisciplined and was given the afternoon off to watch a one-hour racial sensitivity video.

23.     As a direct result of Kohana's discriminatory conduct, Mr. Lucas has suffered damages. Accordingly, and for all of these reasons, the Plaintiff Mr. Lucas brings the following claims:

### COUNT I – Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, for Discrimination Based on Race or National Origin

24.     Mr. Lucas repeats and reasserts the allegations of paragraphs 1 through 23 as if fully restated herein.

25.     Under 42 U.S.C. § 1981, "all persons within the jurisdiction of the United States shall have the same right in every state…to make and enforce contracts…and to the full and equal benefit of all laws…as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

26.     Mr. Lucas' employment relationship with Kohana is contractual in nature so as to invoke the rights secured by 42 U.S.C. §1981.

27.     Kohana is an employer subject to § 1981 as the statute applies to all employers, including private employers as well as state and public employers. 42 U.S.C. § 1981(c).

28.     Mr. Lucas is African American, making him a member of a protected class.

29.     At all relevant times, Mr. Lucas met Kohana's legitimate expectations by adequately performing all of his job duties as Plant Manager.

30.     The above-described acts and omissions Kohana, including but not limited to the termination of Mr. Lucas' employment, constituted interference with Mr. Lucas' employment relationship and were all motivated by illegal race discrimination in violation of 42 U.S.C. § 1981. Mr. Lucas was meeting the reasonable expectations of Kohana, was terminated from his position with Kohana, was replaced by someone outside his protected class, and the reasons given for the termination were pretextual.

31.     Kohana's conduct described herein was done with malice or reckless disregard for Mr. Lucas' federal rights under said law.

32.     As a direct and proximate result of Kohana's conduct, Mr. Lucas has suffered damages, including the loss of his position with Kohana.

**WHEREFORE** Plaintiff Michael Lucas respectfully requests the entry of judgment in his favor and against Defendant Kohana as follows:

A.   Injunctive relief in the form of reinstatement;

B.   Compensatory damages for loss of earnings potential and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

C.   Punitive damages; and

D.   All other relief this Court deems just.

## COUNT II – Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for Discrimination Based on Race or National Origin

33.     Mr. Lucas repeats and reasserts the allegations of paragraphs 1 through 32 as if fully restated herein.

34.     Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to his

30. The above-described acts and omissions by Kohan, including but not limited to the termination of Mr. Lucas' employment, constituted interference with Mr. Lucas' employment relationship and were all motivated by illegal race discrimination in violation of 42 U.S.C. § 1981. Mr. Lucas was meeting the reasonable expectations of Kohan, was terminated from his position with Kohan, was replaced by someone outside the protected class, and the reasons given for the termination were pretextual.

31. Kohan's conduct described herein was done with malice or reckless disregard for Mr. Lucas' federal rights under said law.

32. As a direct and proximate result of Kohan's conduct, Mr. Lucas has suffered damages, including the loss of his position with Kohan.

WHEREFORE, Plaintiff Michael Lucas respectfully requests the entry of judgment in his favor and against Defendant Kohan as follows:

A. Injunctive relief in the form of reinstatement;

B. Compensatory damages for loss of earnings, potential and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

C. Punitive damages; and

D. All other relief this Court deems just.

**COUNT II – Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for Discrimination Based on Race or National Origin**

33. Mr. Lucas repeats and re-alleges the allegations of paragraphs 1 through 32 as if fully restated herein.

34. Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his

[or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

35.     Kohana is an employer as defined under Title VII by virtue of having more than 15 employees in an industry affecting interstate commerce by its nature as a coffee distributor that distributes goods out of state.

36.     Mr. Lucas is African American, making him a member of a protected class.

37.     At all material times, Mr. Lucas met the Defendant's legitimate expectations by adequately performing all of his job duties as a Plant Manager.

38.     Kohana discriminated against Mr. Lucas when it terminated his employment. Mr. Lucas was meeting the reasonable expectations of Kohana, was terminated from his position with Kohana, was replaced by someone outside his protected class, and the reasons given for the termination were pretextual.

39.     The Defendant's conduct described herein was done with malice or reckless disregard for Mr. Lucas's rights under Title VII.

40.     As a direct and proximate result of the Defendant's conduct, Mr. Lucas has suffered damages, including but not limited to, lost wages, lost benefits, loss of future employment commensurate with his experience, loss of status and self-esteem, incidental damages, great expense, and pain and suffering in the form of emotional distress, embarrassment, and humiliation.

**WHEREFORE** Plaintiff Michael Lucas respectfully requests the entry of judgment in his favor and against Defendant Kohana as follows:

A.     An award of damages for back pay, front pay, and other equitable relief including, but not limited to reinstatement;

7

B.    An award of compensatory damages for loss of earnings potential and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.in an amount to be proven at trial;

C.    Punitive damages;

D.    An award of prejudgment interest; and

E.    All other relief this Court deems just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**Dated**: November 22, 2020

**MICHAEL LUCAS**

/s/

Plaintiff, *Pro Se*

Michael Lucas
*Pro Se*
6733 Skyview Drive
Oakland, CA 94605
P: (925) 520-5101
mlucasphotomax@yahoo.com

8

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the allegations set forth in the foregoing Complaint are true and correct to the best of my current personal knowledge, information and belief.

Michael Lucas

NOV. 22, 2020

Date

9

RECEIVED

2020 NOV 23 A 9: 18

SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.